IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:07-CR-32 |
| | ) | (VARLAN/GUYTON) |
| DOUGLAS V. WHISNANT, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court pursuant to defendant, Douglas V. Whisnant's Motion to Suppress [Doc. 15] regarding the seizure of various items from his residence and any statements made by the defendant subsequent to the search. All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. An evidentiary hearing was held on May 29, 2007. Assistant United States Attorney Edgar Schmutzer was present representing the government. Attorneys Leif Jeffers and Mark Strange were present representing the defendant, Douglas V. Whisnant ("Whisnant"). The defendant was also present.

The defendant has been indicted [Doc. 2] on one (1) count of being a convicted felon in possession of firearms and ammunition, a violation of 21 U.S.C. § 922(g)(1) and § 924(e). This charge arises out of the seizure of certain items, namely rifles, shotguns, pistols, ammunition and blasting caps, which were found secreted inside of a wall in the defendant's residence in Huntsville,

1

Tennessee. Officers conducting the subject search were acting pursuant to a search warrant issued by a state court judge.

The defendant has moved to suppress all items of evidence seized from the residence, and any subsequent statements by the defendant, alleging that officers improperly, and without either reasonable suspicion or probable cause, searched beyond the scope of the search warrant by cutting access into an interior wall of the house. The items in question were found and seized inside of the interior wall of the defendant's residence. The defendant, therefore, argues that the items seized were obtained in violation of his Fourth Amendment rights. [Doc. 15]. In response, the government alleges that the search warrant authorized a search of the entire residence. Further, officers had adequate grounds to cut into the wall and gain access to the inside of the wall, due to evidence at the scene and on the wall, which indicated that the inside of the wall was being used to hide items. The government argues that the officers then properly seized the items. [Doc. 16].

## I. FACTS

At the hearing on this Motion, defendant called Donnie Anderson ("Anderson"), a Scott County Sheriff's Department Detective since September, 2006. Prior to joining the Scott County Sheriff's Department, Anderson worked for a total of four and half (4 ½) years as a deputy with the Campbell County Sheriff's Department and with the city of Clinton Police Department

Anderson testified that on March 9, 2007, he was involved in the investigation of the disappearance of Jean Johnson. A search warrant was issued by a state court judge authorizing a search of the defendant's home. Anderson testified that he prepared the documentation for the search warrant and that he was familiar with it. The first paragraph of the search warrant affidavit

2

lists the following items to be searched for: the body of Jean Johnson or portions thereof, human blood, the purse and personal effects of Jean Johnson, Ford van keys, a pink suitcase, a small security camera and video cassette tape, a .38 caliber Smith and Wesson pistol, model 36, serial number CAW0647, bombs, gun powder, explosives, and bomb components. Anderson maintained a surveillance log to log recovered items from the defendant's residence. On that log, he noted the time of the recovery of the items. This log, a seven (7) page document, was marked as Exhibit 1 to the hearing and received into evidence. The first entry on the log, dated March 9, 2007 was made a 1:41 p.m. Anderson testified that he arrived on the scene of the search at approximately 11:00 a.m. on March 9, 2007. On page 3 of the log, at 5:30 p.m., a blue plastic bag with a shirt is noted. On page 4 of the log, at 9:00 p.m., ammunition is noted. On page 5 of the log, at 11:40 p.m., ammunition is noted. Anderson testified that between 5:30 p.m. and 9:00 p.m., specifically at approximately 6:30 p.m., he discovered the area in the wall which appeared to have been cut out and then put back in place. Between 6:30 p.m. and approximately 9:00 p.m., Anderson was cutting open that area of the wall and getting the guns out. Anderson testified that officers were looking for booby traps inside of the wall, and as a result the house was cleared a couple of times during this time period.

Several other officers were involved in executing the search warrant, but Anderson testified that he was in charge of the scene. He testified that Agent Vinsant also was on the scene.

Anderson testified that his attention was drawn to the wall in question because of a discoloration of paint on the wall. He also noticed fast brush strokes in the paint. He also noticed that the picture on the wall, which appeared to cover the cut out area of the wall, had been screwed into the wall with four screws, rather than hung on the wall. He also noted that it was the only

3

picture on any wall in the entire house. Finally, Anderson testified that he had noticed sheetrock dust on a poker next to the fireplace.

Anderson testified that no informant had given officers a tip with regard to items being secreted inside of the wall. The picture had a wood frame and possibly a shelf below the picture as part of the frame. Anderson removed the picture from the wall. Anderson took photographs of the picture on the wall, and of the wall after the picture had been removed, and also of items being removed from inside of the wall.

After Anderson removed the picture from the wall, there was a cut out piece, which had been plastered back, but there was no way to open it without cutting it open. Anderson testified that he saw no weapons or ammunition before he cut into the wall to look inside of the wall.

Anderson testified that a hole also had been cut into the wood panel of the bedroom wall. Although the testimony was not clear on this point, apparently officers made this hole as well. Anderson said that a hole had also been cut into the kitchen wall. However, he did not make that hole and he had no knowledge about that hole or who may have made it. Anderson testified that he was not aware of any other holes in any walls in the house.

Anderson testified that the search warrant did not give specific authority to break into, or cut into, walls inside of the house. Anderson testified that he has executed other search warrants, but that this is the first time that he has cut out sheetrock and looked behind it to see if items had been secreted inside of the wall.

On cross examination, Anderson testified that sometime before 6:30 p.m., on the back porch of the defendant's residence, he saw sheetrock cut-outs. Anderson also noticed that the wall

4

in question was "fastly painted" with a brush, not painted with rollers as the rest of the wall appeared to be. Anderson testified that the dust on the fireplace poker looked like sheetrock dust. Anderson also testified that the defendant had only one picture on a wall in the entire house.

Anderson used a utility knife to cut a piece out of the wall and look inside. He could see guns in plastic bags stored inside of the wall. Then ATF agents began removing items out of the wall. The Knox County Sheriff's Department Bomb Squad also was there, because of a fear of booby traps.

With regard to the log, Anderson testified that the time noted for each entry on the log is when the item was logged in, not when the item was found. Anderson testified that the following items were included in the items found inside of the wall: 9 rifles, 2 shotguns, 2 pistols, 1 sten gun, 6,742 rounds of ammunition, and 39 blasting caps.

On re-direct examination, Anderson testified that the time notations on the log may not have accurately reflected exactly when the items were obtained. Anderson said that with certain items that some time had lapsed between the exact time the item was obtained and when it was noted on the log.

Anderson testified that between 5:30 p.m. and 6:30 p.m. he discovered the suspicious wall. Between 6:30 p.m. and 9:00 p.m. was the general time period for the recovery of items from inside the wall, clearing the house, and searching through the inside of the wall. According to Anderson, the house had to be cleared several times so that the bomb squad could remove the blasting caps.

Anderson testified that he did not personally remove every item from the wall. However, he was the person who logged the items, and as a result, the log does not necessarily

reflect the order in which the items were actually removed from inside of the wall. Anderson said that he does not recall why some items may have been logged in differently.

The search warrant was marked as Exhibit 2 and received into evidence. The search warrant Affidavit, with Exhibits thereto, was marked as Collective Exhibit 3 and received into evidence.

Anderson then reviewed and testified concerning several photographs which he took during the execution of the search warrant. These photographs, numbers 108, 109, 110 and 111, show the discoloration in the paint around the area of the picture on the wall and the wall after the picture was removed. The photographs were marked as Collective Exhibit 5.

On re-cross examination, Anderson testified that wall samples may have been taken for possible blood from the bathroom and the kitchen.

A diagram drawing of the fireplace was found the next day on the coffee table in the same room as the fireplace. That document was marked as Exhibit 4 and received into evidence.

From March 9th at 11:00 p.m. to March 10 at approximately 5:00 p.m., the search continued. Anderson testified that the search did cover two days and was an exhaustive search of the entire property.

Returning to the log, at page 5, the log notes a .22 caliber barrel logged in at 11:40 p.m. Anderson testified that he does not recall that item.

On a second re-direct examination, the witness testified that the diagram, Exhibit 4, has the dimension of the cutout. Alternatively, Anderson said the diagram may just reflect the fireplace itself. There are 46 inch arrows on the diagram which might reflect the cutout area, but

the witness can not tell because there is no drawing showing the area above the fireplace.

The defense then rested its proof, and the government called Officer Ed Rose ("Rose"), a deputy with the Knox County Sheriff's Department. Rose testified that on March 9, 2007, he and his partner were asked to go to Scott County to assist in the execution of the subject search warrant. He was asked to do an overview of the scene and to clear potential booby traps. At approximately 6:30 on the evening of March 9, 2007, after the wall had been opened, Rose went in and looked. He saw guns and plastic bags of items. Rose testified that he and his partner started removing the items one at a time until the container holding the blasting caps was found. Upon making that discovery, Rose asked everyone to leave the house while blasting caps were removed. After removal, Rose and his partner determined that the blasting caps had been altered and they were tangled together. Rose testified that this was hazardous because of the chance of accidental discharge. As the blasting caps were discovered, Rose and his partner took the blasting caps outside of the residence.

Rose testified that he and his partner worked very deliberately to remove the blasting caps and to take them outside. He said that he and his partner "took their time" taking the items out of the wall, because they were dangerous, and also because of the potential for booby traps. Rose testified that as a result, it took several hours, that is, at least two (2) hours, to remove all of the items from the inside of the wall.

On cross examination, Rose testified that he had no role in the decision to cut into the wall. The wall was open when he arrived at the scene. His job was just to remove the items safely.

7

## II. ANALYSIS

The Fourth Amendment protects citizens against unreasonable searches or seizures. U.S. Const. amend IV. In the present case, the defendant does not contest the validity of the search warrant. Rather, the defendant contends that the officers who cut a hole in an interior wall of his house, and seized items from inside of the wall, exceeded the scope of the search warrant, and did so in violation of his Fourth Amendment rights. The government contends that the officers did not exceed the scope of the search warrant, or alternatively, the officers had reason to believe that items were secreted inside of the wall.

The scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that the item or items in question may be found. United States v. Ross, 456 U.S. 798, 827 (1982). Accordingly, the determination as to whether a search is constitutionally reasonable depends on all of the circumstances surrounding the search or seizure, as well as the nature of the search or seizure itself.

In United States v. Becker, 929 F.2d 442 (9th Cir. 1991), when officers executed a search warrant on a residence and adjacent shop, they noticed what appeared to be a newly-poured concrete pad near the shop. The officers used a jackhammer to remove portions of the concrete slab. Underneath the concrete, officers found and seized evidence of methamphetamine. The Becker court found no constitutional violation, saying that the concrete slab was located within the area of the search warrant and, thus, "searching beneath it was clearly within the scope of the warrant." Id. at 446. Moreover, although the officers had time to obtain an additional warrant for the area under the slab, the court held that it was "unnecessary for them to do so as they already had a warrant to search the premises for precisely the type of evidence found under the slab." Id.

Finally, the Becker court stated that while destruction of property in carrying out a search is "not favored," reasonable destruction of property does not violate the Fourth Amendment, citing Dalia v. United States, 441 U.S. 238, 258 (1979) ("[o]fficers executing search warrants on occasion must damage property in order to perform their duty"). Id.

The case law on this issue is in general accord. Reasonable destruction of property to effectuate a search pursuant to a valid search warrant does not violate the Fourth Amendment. What is reasonable depends on the context within which the search takes place. United States v. Weinbender, 109 F.3d 1327, 1330 (8th Cir. 1997) (officer could remove dry wall to expose a hiding spot); United States v. Pugh, No. CR. 302CR69, 2003 WL 21220333 (D. Conn. May 21, 2003) (officer could remove covering and search inside of air conditioning unit).

After examining the facts and circumstances of the present case, the Court must conclude that the manner and scope of the search, specifically, the entry into the interior wall, did not render the search, and subsequent seizure of items, unreasonable. The broadly worded search warrant authorized the officers to search "the residence and property. . . of Douglas V. Whisnant." The search warrant went on to add, "the search is to include the entire premises. . . the residence. . .".

The search warrant also stated with particularity the items to be sought:

> the body of Jean Johnson. . . or portions thereof; human blood; the purse and personal affects of Jean Johnson; Ford van keys; a pink suitcase; a small security camera and video cassette tape; a .38 caliber Smith and Wesson pistol, Model 36. . . ; bombs; gun powder, explosives and bomb components.

9

The Court finds that these items are items which reasonably could be expected to be secreted inside of a wall.

The Court further finds that the officers reasonably made access into the wall in search of the subject items. Anderson testified that the different shade of paint color, combined with the "fast brush" versus rolled application of paint, drew his attention to the wall area covered by the picture. The photos taken before the picture was removed support this testimony. In addition, the picture was attached to the wall in an unusual manner, using four screws rather than a picture hanger. Anderson observed dry wall dust on a poker next to the wall, and he found dry wall cut-outs on the back porch. Therefore, it was reasonable for Anderson to remove the picture and make access to the wall behind the picture to search for the subject items. In short, Anderson had reason to believe that the space inside the wall was being utilized to hide the very evidence he was legally on the premises to find. The only way to obtain this evidence was to cut open the wall and search within. Therefore, the items of evidence seized from inside of the wall will not be suppressed.

The defendant's motion also seeks to suppress "any statements" made by the defendant subsequent to the search. [Doc. 15]. However, there was no evidence presented at the hearing of any such statements or the context in which they were made, and, therefore, the Court has no basis upon which to suppress them.

Thus, the defendant's Fourth Amendment rights were not violated. As such, the Court recommends that the District Court deny the defendant's request to suppress the evidence seized during execution of the search warrant.

## III. CONCLUSION

After carefully considering the evidence introduced during the course of the evidentiary hearing, and after reviewing the relevant legal authorities, it is clear that there is no basis to suppress any evidence seized in this case. For the reasons set forth herein, it is **RECOMMENDED** that defendant's Motion to Suppress [**Doc. 15**] be **DENIED**.[1]

                                Respectfully submitted,

                                s/ H. Bruce Guyton
                                United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see also Thomas v. Arn, 474 U.S. 140 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).