IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:07-CR-32 |
| | ) | (VARLAN/GUYTON) |
| DOUGLAS V. WHISNANT, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court pursuant to defendant, Douglas V. Whisnant's Second Motion to Suppress [Doc. 36] regarding the seizure of various items from his residence. All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. An evidentiary hearing was held on May 29, 2007 following the filing of the first Motion To Suppress. A second evidentiary hearing was held on November 1, 2007, after the Court granted a request by the defendant to re-open the evidence [Doc. 28]. Assistant United States Attorney Edgar Schmutzer was present representing the government. Attorneys Leif Jeffers and Mark Strange were present representing the defendant, Douglas V. Whisnant ("Whisnant"). The defendant was also present.

Following the second evidentiary hearing on November 1, 2007, the Court allowed the parties until December 19, 2007 to file briefs [Doc. 35]. On December 18, 2007, the defendant,

1

rather than file a brief, filed a Second Motion To Suppress [Doc. 36]. The government responded to the Motion on January 4, 2008 [Doc. 37].

The defendant has been indicted [Doc. 2] on one (1) count of being a convicted felon in possession of firearms and ammunition, a violation of 21 U.S.C. § 922(g)(1) and § 924(e). This charge arises out of the seizure of certain items, namely rifles, shotguns, pistols, ammunition and blasting caps, which were found secreted inside of a wall in the defendant's residence in Huntsville, Tennessee. Officers conducting the subject search were acting pursuant to a search warrant issued by a state court judge.

The defendant has moved [Doc. 36] to suppress all items of evidence seized from the defendant's residence, alleging that officers improperly, and without either reasonable suspicion or probable cause, searched beyond the scope of the search warrant by cutting access into an interior wall of the house, and further, that officers seized firearms which weren't the firearms specified in the search warrant. The items in question were found and seized inside of the interior wall of the defendant's residence. The defendant, therefore, argues that the items seized were obtained in violation of his Fourth Amendment rights. In response, the government alleges that the search warrant authorized a search of the entire residence. Further, officers had adequate grounds to cut into the wall and gain access to the inside of the wall, due to evidence at the scene and on the wall, which indicated that the inside of the wall was being used to hide items. The government argues that the officers then properly seized all of the items, as they were in plain view [Doc. 37].

# I. FACTS

At the November 1, 2007 evidentiary hearing, the government called Captain Tommy Ray Jeffers ("Captain Jeffers"), of the Scott County Sheriff's Department. Captain Jeffers was the only witness to testify.

Captain Jeffers testified that on March 9, 2007, he was present at the defendant's house and property, assisting with a search pursuant to a search warrant. In the course of doing this, Captain Jeffers noticed "sheetrock pieces" on the back porch near the exterior door into the kitchen, and later he saw what looked like "sheetrock dust" on the fireplace tools in the room with a fireplace. He testified that he then looked at the wall above the fireplace and noticed "paint swipes" where the paint on the sheetrock, partially covered by a hanging picture, had been "touched up." He informed Detective Donnie Anderson ("Anderson") and Agent Vinsant with the T.B.I., and then he and Anderson removed the picture from the wall. He then could see the area where the sheetrock wall had been patched.

Captain Jeffers testified that Agent Vinsant then: "told us to go ahead and try to get an area where we could see into the wall, to cut around the patch." So he and Anderson cut into the wall, looked inside and saw "rolls of cloth material." Captain Jeffers then testified:

> Q. What did you think might be back there?
>
> A. I wasn't exactly for sure at that point until we got the sheetrock pushed on in a little bit more and then we could see that it was gun bags.

(Tr. pg. 8).

Then Captain Jeffers and Anderson removed the sheetrock and other officers came in and began removing the various items found in the wall.

3

On cross-examination, Captain Jeffers stated that several officers observed the sheetrock pieces on the back porch. He stated that he called Anderson's attention to the sheetrock dust on the fireplace tools. He added that he and other officers had been in the fireplace room before the time when the sheetrock dust was noticed there. He also testified that he wasn't aware of any "tips" which law enforcement had received about weapons hidden in the walls of the house.

Finally, Captain Jeffers testified:

Q. What were you looking for [inside of the wall]?

A. Looking for a body and evidence of a crime of murder.

· · · · ·

It could have been anything hidden behind it [the wall]. Once you open it up, it's a big area.

Q. My question was, were you looking for anything specifically, when you opened the wall up?

A. We was looking for anything that could have been hidden back there.

(Tr. p. 32-33).

## II. ANALYSIS

The Fourth Amendment protects citizens against unreasonable searches or seizures. U.S. Const. amend IV. In the present case, the defendant does not contest the validity of the search warrant. Rather, the defendant contends that the officers who cut a hole in an interior wall of his house, and seized items from inside of the wall, exceeded the scope of the search warrant, and did so in violation of his Fourth Amendment rights. The government contends that the officers did not exceed the scope of the search warrant, or alternatively, the officers had reason to believe that items were secreted inside of the wall.

The scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that the item or items in question may be found. United States v. Ross, 456 U.S. 798, 827 (1982). Accordingly, the determination as to whether a search is constitutionally reasonable depends on all of the circumstances surrounding the search or seizure, as well as the nature of the search or seizure itself.

In United States v. Becker, 929 F.2d 442 (9th Cir. 1991), when officers executed a search warrant on a residence and adjacent shop, they noticed what appeared to be a newly-poured concrete pad near the shop. The officers used a jackhammer to remove portions of the concrete slab. Underneath the concrete, officers found and seized evidence of methamphetamine. The Becker court found no constitutional violation, saying that the concrete slab was located within the area of the search warrant and, thus, "searching beneath it was clearly within the scope of the warrant." Id. at 446. Moreover, although the officers had time to obtain an additional warrant for the area under the slab, the court held that it was "unnecessary for them to do so as they already had a warrant to search the premises for precisely the type of evidence found under the slab." Id.

Finally, the Becker court stated that while destruction of property in carrying out a search is "not favored," reasonable destruction of property does not violate the Fourth Amendment, citing Dalia v. United States, 441 U.S. 238, 258 (1979) ("[o]fficers executing search warrants on occasion must damage property in order to perform their duty"). Id.

The case law on this issue is in general accord. Reasonable destruction of property to effectuate a search pursuant to a valid search warrant does not violate the Fourth Amendment. What is reasonable depends on the context within which the search takes place. United States v. Weinbender, 109 F.3d 1327, 1330 (8th Cir. 1997) (officer could remove dry wall to expose a hiding

5

spot); United States v. Pugh, No. CR. 302CR69, 2003 WL 21220333 (D. Conn. May 21, 2003) (officer could remove covering and search inside of air conditioning unit).

After examining the facts and circumstances of the present case, the Court must conclude that the manner and scope of the search, specifically, the entry into the interior wall, did not render the search, and subsequent seizure of items, unreasonable. The broadly worded search warrant authorized the officers to search "the residence and property. . . of Douglas V. Whisnant." The search warrant went on to add, "the search is to include the entire premises. . . the residence. . .".

The search warrant also stated with particularity the items to be sought:

> the body of Jean Johnson. . . or portions thereof; human blood; the purse and personal affects of Jean Johnson; Ford van keys; a pink suitcase; a small security camera and video cassette tape; a .38 caliber Smith and Wesson pistol, Model 36. . . ; bombs; gun powder, explosives and bomb components.

The Court finds that these items are items which reasonably could be expected to be secreted inside of a wall.

The Court further finds that the officers reasonably made access into the wall in search of the subject items. Captain Jeffers testified that sheetrock dust on the fireplace tools and the apparent patch of the wall drew his attention to the wall area covered by the picture. Captain Jeffers earlier had noticed sheetrock pieces on the back porch. Therefore, it was reasonable for officers to remove the picture and make access to the wall behind the picture to search for the subject items. In short, the officers had reason to believe that the space inside the wall was being utilized to hide the very evidence they were legally on the premises to find. The only way to obtain

this evidence was to cut open the wall and search within. The defendant questions the credibility of Captain Jeffers. The Court finds, however, that there are no grounds upon which to find that Captain Jeffers is not credible. Therefore, the items of evidence seized from inside of the wall will not be suppressed.

Thus, the defendant's Fourth Amendment rights were not violated. As such, the Court recommends that the District Court deny the defendant's request to suppress the evidence seized during execution of the search warrant.

### III. CONCLUSION

After carefully considering the evidence introduced during the course of the evidentiary hearing, and after reviewing the relevant legal authorities, it is clear that there is no basis to suppress any evidence seized in this case. For the reasons set forth herein, it is **RECOMMENDED** that defendant's Second Motion to Suppress [**Doc. 36**] be **DENIED**.[1]

        Respectfully submitted,
        s/ H. Bruce Guyton
        United States Magistrate Judge

---

[1]Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see also Thomas v. Arn, 474 U.S. 140 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).