UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DOUGLAS V. WHISNANT, | ) |
| *Petitioner*, | ) |
| v. | ) Nos.: 3:07-CR-032-TAV-HBG-1 |
| | ) 3:11-cv-490-TAV-HBG |
| UNITED STATES OF AMERICA, | ) |
| *Respondent*. | ) |

**MEMORANDUM**

This is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 filed by petitioner Douglas V. Whisnant ("petitioner"). The government has filed its response to the motion and petitioner has filed his reply. Petitioner has also filed three motions to amend the § 2255 motion to state additional claims [Docs. 97, 98, and 99], as well as a motion to correct his reply to the government's response [Doc. 96]. There are also pending petitioner's motions to set a hearing date [Doc. 101], to expedite [Doc. 103], and to require the prosecutor to answer the motions to amend [Doc. 107]. The motion to correct will be **GRANTED**. For the reasons stated below, the motions to amend will be **DENIED** as time-barred, the § 2255 motion will be **DENIED**, the remaining motions will be **DENIED** as **MOOT**, and this action will be **DISMISSED**.

**I.      Standard of Review**

This Court must vacate and set aside petitioner's conviction upon a finding that "there has been such a denial or infringement of the constitutional rights of the prisoner

as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. To prevail under § 2255, petitioner "must show a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1968)).

Under Rule 8 of the Rules Governing Section 2255 Proceedings In The United States District Courts, the Court is to determine after a review of the answer and the records of the case whether an evidentiary hearing is required. If the motion to vacate, the answer and the records of the case show conclusively that petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

**II.  Factual Background**

Petitioner was convicted by a jury of felon in possession of a firearm and possession of unregistered firearms. By judgment entered March 25, 2009, he was sentenced as an armed career criminal to concurrent terms of imprisonment of 300 months and 120 months, respectively, for a total effective term of imprisonment of 300 months. [Doc. 81[1], Judgment]. Petitioner's convictions and sentence were affirmed on direct appeal. *United States v. Whisnant*, 391 F. App'x 426 (6th Cir. Aug. 11, 2010), *cert. denied*, 131 S. Ct. 586 (Nov. 8, 2010).

---

[1] All citations to the record refer to the docket sheet in Criminal Action No. 3:07-cr-32.

The Sixth Circuit summarized the facts underlying petitioner's convictions and sentence as follows:

> In February 2007, Jean Johnson, Whisnant's former spouse, disappeared, and the investigation of her disappearance immediately focused on Whisnant because of their tumultuous relationship. As part of the investigation, law enforcement applied for and received a warrant to search his property. The warrant, issued by a Tennessee state court judge on March 9, 2007, authorized a search of "the entire premises, woods, fields, curtilage, the residence and all out buildings and all vehicles and equipment" for "the body of ... Jean Johnson ... or portions thereof; human blood; the purse and personal effects of Jean Johnson; Ford van keys; a pink suitcase; a small security camera and video cassette tape; a .38 caliber Smith and Wesson pistol ... bombs, gun powder, explosives, and gun components." (District Court Record ("R.") 16, Resp. to Mot. to Suppress, Ex. E: Search Warrant.)
>
> Officers from several different agencies executed the search warrant, dividing into teams to search the property. Captain Tommy Ray Jeffers of the Scott County Sheriff's Department was assigned to search the residence. On the porch, he noticed construction materials and plasterboard used for drywalling. Once inside, he entered a room with a picture hanging over a fireplace and noticed that the fireplace utensils were covered in a white powder that resembled drywall dust. He also noticed that the paint surrounding the picture appeared to have been recently touched-up. Realizing that the picture may have been hung in an effort to conceal evidence, Jeffers, joined by other officers, removed it. The officers then could see that the wall recently had been patched. Next, the officers cut a small hole in the patch through which Jeffers could see what appeared to be rolls of cloth. The officers then enlarged the opening and discovered that the cloth actually was numerous gun bags.
>
> Because of Whisnant's history of bomb-making, the officers were concerned that the area inside the wall might be rigged with explosives. They therefore asked members of the bomb-squad unit to remove the items. As members of the unit removed the items from the wall, they discovered firearms, ammunition, and bomb-making materials. In addition to several rifles, shotguns, and pistols, a Sten machine gun and two pen guns were found. Also, a search of a workshop on Whisnant's property uncovered components of a Sten machine gun.

3

Less than two weeks later, on March 21, 2007, a grand jury indicted Whisnant on one count of being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1). Whisnant filed a motion to suppress the firearms and ammunition found behind the wall of his home. During the suppression hearing, the magistrate judge heard testimony from several officers, including Detective Donnie Anderson, who was present during the search. After the district court denied the motion to suppress, it came to light that Anderson had engaged in professional misconduct unrelated to this case. Consequently, the magistrate judge conducted a second hearing without testimony from Anderson. During the second hearing, Jeffers testified and explained the manner in which the search was executed and described the circumstances leading to the decision to cut a hole in the wall. The magistrate judge concluded that the "officers reasonably made access into the wall" to search for the items listed in the "broadly worded search warrant," and recommended denying the motion to suppress. (R. 41, Report and Recommendation, 7.) The district court agreed and denied the motion.

On July 16, 2008, a grand jury returned a superseding indictment charging Whisnant with knowingly possessing an unregistered machine gun, in violation of 26 U.S.C. §§ 5841, 5861(d), in addition to the previous felon-in-possession charge.

The case against Whisnant proceeded to trial. A number of law enforcement officers testified as to the items uncovered during the search of Whisnant's residence. Agent Forest Webb of the Bureau of Alcohol, Tobacco, and Firearms ("ATF") testified that he was part of the team that executed the search and had discovered components of a Sten machine gun. Agent Sean Knapp, a firearms specialist with the ATF, then explained to the jury that both a Sten gun and components of a Sten gun qualify as a machine gun and must be registered under federal law. Knapp further explained that, for purposes of federal law, Whisnant possessed three machine guns: "the functional machine gun, the cut out receiver, and combination of parts from which a machine gun could be assembled." (R. 86, Trial Tr., 45-46.) The Government also introduced evidence under Federal Rule of Evidence 404(b) that Whisnant previously had been convicted in state court for illegally possessing a Sten machine gun. Finally, a fingerprint examiner testified that a fingerprint belonging to Whisnant was found on the seized fully-assembled Sten gun.

4

> Before resting, the Government read a number of stipulations into the record: (1) the commercially manufactured firearms found on Whisnant's property were manufactured outside the State of Tennessee; (2) Whisnant was a convicted felon; and (3) none of the firearms found on Whisnant's property were registered. Whisnant offered no witnesses and was convicted on both counts.
>
> The United States Probation Office then prepared a Presentence Investigation Report ("PSR"). The PSR determined that Whisnant was an Armed Career Criminal under 18 U.S.C. § 924(e)(2), and calculated an offense level of 34. The PSR placed Whisnant in criminal history category IV, and, based on that category and the offense level of 34, set Whisnant's advisory guidelines range at 262 to 327 months of imprisonment. Whisnant did not object to the PSR.
>
> On March 11, 2009, the district court held a sentencing hearing. After considering the factors listed in 18 U.S.C. § 3553(a) and the Guidelines range, the district court sentenced Whisnant to a within-Guidelines sentence of 300 months. The district court did so in part because Whisnant has an extensive criminal history, was on probation at the time of the offense, and since has pled guilty to his former spouse's murder.

*Id*. at 427-429.

In his 32-page § 2255 motion, petitioner purports to allege thirty-two grounds for relief. His claims, however, center around seven central issues: (1) exculpatory evidence withheld from the defense in violation of *Brady*; (2) prosecutorial misconduct in presenting false testimony; (3) an illegal search; (4) admission of evidence of a prior conviction which violated the Double Jeopardy Clause; (5) error on the part of the trial court in asking potential jurors if they believed all people had a right to bear arms; (6) error on the part of the trial court in not letting the parties answer a question from the jury during deliberation; and (7) ineffective assistance of counsel. After the government filed

5

its response to the § 2255 motion, petitioner filed three subsequent motions to amend the § 2255 motion.

## III. Statute of Limitation

A federal prisoner has one year in which to file a § 2255 motion. The limitation period generally runs from the date on which the judgment of conviction becomes final. Petitioner's judgment of conviction became final when the Supreme Court denied his petition for writ of certiorari on November 8, 2010. Accordingly, petitioner had until November 8, 2011, within which to file his § 2255 motion.

Petitioner timely filed his original § 2255 motion on October 5, 2011. [Doc. 91]. Petitioner's motions to amend the § 2255 were filed on January 4, 2012, February 3, 2012, and August 2, 2012. [Docs. 97, 98, and 99, respectively]. The question, then, is whether the motions to amend are timely because they "relate back" to the original filing date.

"An amended habeas petition, we hold, does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005). *See also Oleson v. United States*, 27 F. App'x 566, 571, 2001 WL 1631828 *3 (6th Cir. December 14, 2001) ("Oleson's amendment does not escape the AEDPA statute of limitations by 'relating back' to previous claims -- Oleson's amendment raises an entirely new argument").

6

Petitioner's motions to amend raise new claims concerning the validity of the search warrant and the assistance of counsel, which are unrelated to his original claims. His new allegations do not relate back to the original pleading, are time-barred, and therefore will not be considered by the Court.

## IV. Discussion

### A. Exculpatory Evidence

In *Brady v. Maryland*, 373 U.S. 83, 86 (1963), the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." "Favorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different.'" *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

Petitioner claims that the prosecution withheld a written statement that his ex-wife gave the authorities when she sought an order of protection against him, in which Ms. Johnson stated that she had seen petitioner purchase firearms in the past. [Doc. 91, Motion to Vacate, Exhibit B]. Petitioner contends the statement, which was dated January 18, 2007, shows that the search warrant issued on March 9, 2007, was really to allow the police to search for weapons on his premises, and not for Ms. Johnson's body

7

or personal effects. Petitioner argues that because the search warrant was a ruse, the search was invalid. There is nothing in the record, however, to support this argument.

In addition, the argument overlooks the fact that petitioner's ex-wife had disappeared the previous month, after the order of protection was issued. The authorities had good reason to search petitioner's property for evidence surrounding her disappearance. Disclosure of the statement would not have invalidated the search warrant, and petitioner has failed to demonstrate a *Brady* violation.

### B. Prosecutorial Misconduct

Petitioner alleges that Special Agent Vinsant and Detective Anderson "conspired to give falsified testimony to the court to obtain an unconstitutional conviction" [Doc. 91, Motion to Vacate, p. 21] and that the prosecutor "committed misconduct when he used [such] tainted evidence" [*id*. at 16]. Petitioner does not, however, specify the testimony that he claims was false nor does he state any basis for concluding that the officers' testimony was false. A § 2255 movant has the burden of proving the substance of his allegations by a preponderance of the evidence and a district court is not required to hold an evidentiary hearing on the basis of conclusory allegations. *See, e.g., Ashley v. United States*, 17 F. App'x 306, 308 (6th Cir. 2001); *Tucker v. United States*, 423 F.2d 655, 656 (6th Cir. 1970); *United States v. Orlando*, 327 F.2d 185, 188 (6th Cir. 1964); *Malone v. United States*, 299 F.2d 254, 255 (6th Cir. 1962).

Petitioner also alleges that the prosecutor "committed misconduct when he introduced a prior conviction that was not relevant to the case being tried, to gain a

conviction by misleading and confusing the jury on what issues was to be deliberated on." [*Id*. at 16]. The Court having found, however, that the prior conviction was relevant, *infra*, there was no prosecutorial misconduct in this regard.

### C.  Legality of Search

Petitioner reiterates his claim that the search of his property was illegal and that the evidence should have been suppressed. He cannot, however, use a § 2255 proceeding to relitigate issues decided adversely to him on direct appeal absent extraordinary circumstances, which are not present here. *See, e.g., Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999) ("It is ... well settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law.") (citations omitted).

### D.  Double Jeopardy Clause

Petitioner alleges that the admission of evidence at trial of his prior conviction violated his Fifth Amendment protection against double jeopardy. He refers to his July 18, 2005, conviction on three counts of being in possession of a prohibited weapon after he was arrested and his property searched on May 6, 2005. [Doc. 91, Motion to Vacate, pp. 3, 16-17].

The government contends that petitioner procedurally defaulted this claim by failing to raise it on direct appeal. *See Regalado v. United States*, 334 F.3d 520, 527–28 (6th Cir. 2003) (holding that movant under § 2255 must show cause and prejudice for

9

failure to raise a claim in the district court or on direct appeal) (citing *United States v. Frady*, 456 U.S. 152 (1982) and *Bousley v. United States*, 523 U.S. 614 (1998)). Because petitioner also raised the claim in the guise of ineffective assistance of counsel based upon counsel's alleged failure to object to the evidence, the Court will address the claim on the merits.

During the testimony of Steve Vinsant, a special agent with the Tennessee Bureau of Investigation who assisted with the 2007 search, there was a passing mention of the previous 2005 search of petitioner's property; Special Agent Vinsant testified that he interviewed petitioner after the search and petitioner claimed the firearms were left over from a prior search in which weapons were found. [Doc. 86, Trial Transcript, pp. 5-6].

Thomas E. Barclay, an assistant district attorney general, testified on direct examination as to petitioner's prior convictions for possession of a prohibited weapon in the Criminal Court for Scott County, Tennessee, in 2005. [*Id.* at 30-32]. The Court instructed the jury as follows after Mr. Barclay's testimony:

> Let me remind the jury before cross-examination, with respect to this testimony you have heard testimony the defendant committed crimes other than the ones charged in the superseding indictment. If you find the defendant did those crimes, you should consider that evidence only as it relates to the government's claim in this case on the defendant's motive, intent, knowledge and absence of mistake or accident of the part of the defendant. You must not consider it for any other purpose.
>
> Remember the defendant is on trial here only for being a felon in possession of forearms or ammunition and for receiving or possessing a firearm not registered to him, not for the other acts and you should not return a guilty verdict, unless the government proves the crime in the indictment beyond a reasonable doubt.

10

> I want to explain to you the purposes for which this evidence of other crimes is being introduced and how you should consider that evidence.

[*Id.* at 32-33].

The Double Jeopardy Clause of the Fifth Amendment guarantees three separate constitutional protections: protection against a second prosecution for the same offense after acquittal, protection against a second prosecution for the same offense after conviction, and protection against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). Petitioner argues that evidence at trial of his prior conviction resulted in his being punished twice for the same offense. That argument lacks merit.

Evidence of petitioner's prior convictions for possession of a prohibited weapon was necessary to establish his status as a convicted felon and was also relevant to the charge that he knowingly possessed an unregistered machine gun. Petitioner's rights under the Double Jeopardy Clause were not violated.

### E.  Trial Court Error -- Voir Dire

Petitioner alleges the trial court erred in asking potential jurors if they believed all people had a right to bear arms. The government contends that petitioner procedurally defaulted this claim by failing to raise it on direct appeal. Again, because petitioner also raised the claim in the guise of ineffective assistance of counsel based upon counsel's alleged failure to object to the question, the Court will address the claim on the merits.

11

The Court does not recall asking the jury this question nor is it a question that the Court would normally ask of prospective jurors. *See Ray v. United States*, 721 F.3d 758, 763-64 (6th Cir. 2013) (district court judge considering a § 2255 motion who presided over the criminal trial can rely on his "own recollections of the proceedings" without the need for an evidentiary hearing or additional evidence); *Solomon v. United States*, 467 F.3d 928, 935 (6th Cir. 2006) ("[A] district judge simply may rely on his or her recollections of the criminal proceedings in deciding a Section 2255 motion without testifying."). In any event, petitioner's claim of error lacks merit.

A district court judge has broad discretion during the *voir dire* of the jury. "Because the obligation to impanel an impartial jury lies in the first instance with the trial judge, and because he must rely largely on his immediate perceptions, federal judges have been accorded ample discretion in determining how best to conduct the *voir dire*." *Rosales-Lopez v. United States*, 451 U.S. 182, 189 (1981). The purpose of the trial court's inquiry is to ask questions "that might tend to show juror bias." *Mu'Min v. Virginia*, 500 U.S. 415, 427 (1991). In this case, assuming for the purposes of argument that the question was asked, the Court would simply have been trying to assess jury bias with respect to firearms.

### F. Trial Court Error -- Juror Question

This claim relates to the fact that, during deliberations, the jury sent a question to the Court asking if the fireplace behind which the weapons were found was an actual working fireplace. According to petitioner, the Court declined to answer the question,

12

leaving the jury to believe the fireplace was a fake. The government contends that petitioner procedurally defaulted this claim by failing to raise it on direct appeal. The claim was not raised on direct appeal, petitioner does not allege ineffective assistance of counsel with respect to this claim, and petitioner has not demonstrated good cause for raising the claim for the first time in a collateral proceeding. Accordingly, the Court finds that this claim has been procedurally defaulted.

### G. Assistance of Counsel

Petitioner alleges that he received the ineffective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

To establish that his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970), petitioner must demonstrate that the attorney's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular case. *Id*. at 690. Additionally, "a court must indulge a strong presumption

13

that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

The issue is whether counsel's performance "was so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (en banc). Because he is seeking relief under § 2255, petitioner bears the burden of proving by a preponderance of the evidence that his counsel was deficient. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

Petitioner was represented during pretrial proceedings by attorneys Leif Jeffers and Mark Strange. [Doc. 5, *Pro Hac Vice* Motion and Notice of Appearance by Leif Jeffers; Doc. 14, Notice of Appearance by Mark W. Strange]. After the motion to suppress was denied, Mr. Jeffers and Mr. Strange withdrew as counsel of record and R. Alexander (Alex) Brown was appointed to represent petitioner. [Doc. 46, Joint Motion to Withdraw; Doc. 48, Memorandum and Order Appointing Counsel].

Plaintiff alleges ineffective assistance of counsel claims against both Leif Jeffers and Alex Brown. The Court will consider these claims in turn.

**Leif Jeffers**

Petitioner claims Mr. Jeffers failed to subpoena witnesses for the second suppression hearing who would testify there was nothing odd about the picture over the fireplace being screwed into the wall. Petitioner does not, however, identify any

14

witnesses who would have testified to that and an attorney is not required to call non-existent witnesses. In addition, as the Sixth Circuit observed, the decision by the officers to investigate behind the wall "was based on the presence of drywall dust, the haphazard paint job around the picture, and the recently plastered patch of drywall behind the picture" as well as the fact that the picture was screwed into the wall. *Whisnant*, 391 F. App'x at 430. This claim of ineffective assistance of counsel lacks merit.

Petitioner also claims that Mr. Jeffers failed to impeach Captain Jeffers at the second suppression hearing with evidence that Captain Jeffers had filed a false police report concerning a stabbing incident involving Captain Jeffers and his wife's ex-husband. There is no evidence in the record, however, that Captain Jeffers actually filed a false police report.

Even assuming there was a filing of a false police report, such action would have gone only to the officer's general credibility, but would not have shown that he was lying about the search of petitioner's home. *See Beuke v. Houk*, 537 F.3d 618, 635-36 (6th Cir. 2008) (impeachment evidence which undermined a witness's "overall credibility" does not undermine "confidence in the jury's verdict" given other "objective evidence" supporting the verdict). That is especially true in this case, in which other officers testified at the suppression hearing about what they observed at petitioner's residence.

Accordingly, it is highly unlikely that the motion to suppress would have been granted had counsel demonstrated that Captain Jeffers filed a false police report in an unrelated matter. This claim of ineffective assistance of counsel lacks merit.

15

Finally, petitioner alleges that Mr. Jeffers was overpaid and also stole personal items from him. However, petitioner does not cite, nor is the Court aware, of any case law to the effect that overpayment to an attorney or theft by the attorney constitutes ineffective assistance of counsel. *See, e.g., United States v. Nickerson*, 556 F.3d 1014, 1019 (9th Cir. 2009) (a violation of professional conduct rules does not amount to *per se* ineffective assistance) (listing cases). This claim lacks merit.

**Alex Brown**

Petitioner alleges that Mr. Brown failed to impeach Captain Jeffers at trial with evidence of the false police report. As with petitioner's claim against Mr. Jeffers in this regard, other officers testified at trial about what they saw at petitioner's residence. Thus, it is highly unlikely the verdict would have been different had Captain Jeffers been questioned about filing a false police report. This claim of ineffective assistance of counsel lacks merit.

Petitioner next alleges that Mr. Brown failed to develop a good trial strategy and failed to call any defense witnesses. Petitioner does not, however, specify what witnesses should have been called nor what a good trial strategy would have been. "An attorney is not required to present a baseless defense or to create one that does not exist." *Krist v. Flotz*, 804 F.2d 944, 946 (6th Cir. 1986). This claim lacks merit.

Petitioner also alleges that Mr. Brown failed to object to the trial court's questioning of the jurors during voir dire about the right to bear arms and failed to object to the use of his prior conviction in violation of the Double Jeopardy Clause. The Court

16

has previously determined that the trial court's question was not error nor was the use of petitioner's prior conviction, and thus counsel was not ineffective in failing to object. *See United States v. Hanley*, 906 F.2d 1116, 1121 (6th Cir. 1990) (the failure of defense counsel to pursue frivolous motions and objections cannot constitute ineffective assistance of counsel); *United States v. Neeley*, 189 F.3d 670, 684 (7th Cir. 1999) ("Obviously, counsel can not [sic] be considered ineffective for failing to make an objection to the introduction of evidence that was properly admitted.").

Lastly, petitioner alleges that Mr. Brown failed to keep him apprised of the status of his appeal and the Supreme Court's denial of his petition for writ of certiorari on November 8, 2010. According to petitioner, Mr. Brown did not notify him of the denial until August 29, 2011, causing him "to lose valuable time in filing this petition on time." [Doc. 91, Motion to Vacate, p. 20]. Nevertheless, petitioner was able to timely file his § 2255 motion. He is not entitled to relief on this claim.

Based upon the foregoing, petitioner has failed to demonstrate ineffective assistance of counsel under the *Strickland* standard.

## V.  Conclusion

Petitioner has failed to demonstrate that he is entitled to relief under § 2255 and his motion to vacate, set aside or correct sentence will be **DENIED**. This action will be **DISMISSED**. The Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** petitioner leave to proceed *in forma pauperis* on appeal. See Rule 24 of the Federal

Rules of Appellate Procedure.  Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

    **AN APPROPRIATE ORDER WILL ENTER.**

    s/ Thomas A. Varlan
    CHIEF UNITED STATES DISTRICT JUDGE

18

Case 3:07-cr-00032-TAV-HBG   Document 111   Filed 11/20/14   Page 18 of 18   PageID #: 533